**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER LAMAR MCNEAR, | : | |
| Plaintiff, | : | |
| | : | No. 5:25-cv-6925 |
| v. | : | |
| | : | |
| PERSON DIRECTED SUPPORTS, INC., | : | |
| Defendant. | : | |

**O P I N I O N**
**Defendant's Partial Motion to Dismiss, ECF No. 22 – Granted**

**Joseph F. Leeson, Jr.**                                              **June 9, 2026**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff, Christopher Lamar McNear, brings the present action against Defendant, Person

Directed Supports, Inc. ("PDS"). McNear alleges gender discrimination under Title VII of the

Civil Rights Act of 1964, disability discrimination under the Americans with Disabilities Act

("ADA"), retaliation under Title VII and the ADA, and wrongful termination under Pennsylvania

law. PDS brings the present Partial Motion to Dismiss the ADA discrimination claim, the

retaliation claim, and the wrongful termination claims under Title VII and the ADA for failure to

exhaust his administrative remedies before the Equal Employment Opportunity Commission

("EEOC"). For the following reasons, the Court grants the Motion.

II.    **BACKGROUND**

A.  **Factual Allegations**

McNear was employed by Person Direct Supports ("PDS") as a Direct Support Professional beginning in April 2022. *See* Am. Compl. ¶ 10, ECF No. 14. "His duties included providing daily care and support to individuals with intellectual and developmental disabilities in [PDS'] residential homes." *Id.*

McNear alleges that, four times during his employment with PDS, he applied for director positions. *See id.* ¶¶ 11–15. Yet, he alleges that each time, he was denied such opportunities "in favor of less-qualified female candidates." *Id.* ¶ 15.

McNear alleges that he suffered a work-related injury to his lower back on January 20, 2024. *See id.* ¶ 19. That day, McNear wrote to PDS saying that he intended to return to light duty work on January 23, 2024. *See id.* ¶ 20. PDS's Human Resources Manager asked McNear to submit to a post-injury drug test, which he refused. *See id.* PDS placed McNear on administrative leave. *See id.* ¶ 21. "On January 23, 2024, [PDS] issued a Notice of Temporary Compensation Payable (NTCP) acknowledging the work-related injury and accepting medical liability[,]" and "formally initiated [McNear's] workers' compensation proceedings." *Id.* ¶ 22. PDS terminated McNear's employment on January 29, 2024, and issued a letter on January 30, 2024, stating that his termination was due to his refusal to submit to the drug test. *See id.* ¶ 23.

McNear filed a Charge of Discrimination before the EEOC on March 1, 2024. *See* Charge No. 530-2024-00172 (the "EEOC Charge"), ECF No. 22-3. McNear checked the box saying "Discrimination Based On" for "Age" and "Sex." *Id.* The "Particulars" box of McNear's EEOC Charge provided as follows:

> I began employment with Respondent [PDS] on or about April 11, 2022 as a Direct Support Professional.

Between about April 2023 and October 2023, I had applied for four internal promotions with Respondent and was passed over for each one. [I] applied for regional director and director positions online. I had followed the company process to apply for the Assistant Director position and [each] time a female was selected for the position. I am not sure of the ages of all four females accepted but to the best of knowledge I wasn't even [given] interviews for several of these open roles. Respondent did not tell me why I was not selected or why I didn't receive any interviews.

I was terminated on or about January 30, 2024[,] for refusing a drug test after a workplace incident that is a separate unrelated [Occupational Safety and Health ACT] OSHA issue.

I believe I was discriminated against due to my sex (male) and my age (YOB 1981), in violation of the Age Discrimination in Employment Act [] 1967, as amended and Title VII of the Civil Rights Act of 1964, as amended, with respect to promotion.

*Id.*[1]

In McNear's February 20, 2024 intake interview with the EEOC, he discussed the alleged sex and age discrimination, and said "[h]e was terminated after refusing a drug test after a workplace incident which he said was a[n] OSHA violation." *See* Intake Interview, ECF No. 23. During the intake interview, McNear also said that "[h]is termination was related to OSHA and doesn't think it was discriminatory." *Id.*

On or about September 15, 2025, the EEOC issued a Determination and Notice of Right to Sue to McNear. *See* Am. Compl. ¶ 8; *see also* Sept. 10, 2025 Letter, ECF No. 23 (providing a

---

[1]     Since McNear's EEOC Charge is a matter of public record and integral to his discrimination claims, the Court considers the EEOC Charge in the context of this Motion to Dismiss. *See Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) ("The Magistrate Judge and District Court properly relied on Ruddy's EEOC file, which Ruddy referenced in his complaint and which is integral to his claim[.]"); *Braddock v. SEPTA*, No. 13-6171, 2014 WL 6698306, at *7 (E.D. Pa. Nov. 25, 2014) ("I may properly consider EEOC filings in the context of a motion to dismiss for failure to exhaust administrative remedies without converting the motion into one for summary judgment.").

letter from an EEOC investigator that states that McNear alleged that PDS "discriminated against [him] because of [his] age and sex by way of promotion").

## B. Procedural History

McNear filed his Complaint on December 8, 2025. *See* Compl., ECF No. 2. McNear also filed an application to proceed *in forma pauperis* on December 8, *see* ECF No. 1, which the Court denied on February 2, 2026. *See* ECF No. 7. McNear paid the filing fee on March 27, 2026. *See* ECF No. 12. McNear filed an Amended Complaint on March 30, 2026. *See* Am. Compl., ECF No. 14. McNear brings four claims. *See id.* Count I is for sex/gender discrimination under Title VII of the Civil Rights Act. *See* Am. Compl. ¶¶ 33–42. Count II is for disability discrimination under the ADA. *See id.* ¶¶ 43–50. Count III is for retaliation under both Title VII and the ADA. *See id.* ¶¶ 51–57. McNear alleges wrongful termination in each of Counts I, II, and III. Count IV is for wrongful discharge for pursuit of his workers' compensation rights, in violation of Pennsylvania public policy. *See id.* ¶¶ 58–67.

On April 23, 2026, PDS moved to dismiss the disability discrimination and retaliation claims (Counts II and III) and the wrongful termination claims in Counts I through III for McNear's failure to exhaust them before the EEOC. *See* Mot. to Dismiss, ECF No. 22; *see also* EEOC Charge, ECF No. 22-3. On April 24, 2026, McNear filed a Response in Opposition to the Motion, maintaining that the disability discrimination, wrongful termination, and retaliation claims arose out of his EEOC Charge. *See* Resp., ECF No. 23. PDS filed a Reply on April 30, 2026, again contending that McNear failed to exhaust these claims before the EEOC. *See* Reply, ECF No. 24.

### III.    LEGAL STANDARDS

#### A.  Motion to Dismiss for Failure to State a Claim[2]

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223,

---

[2]    Failure to exhaust EEOC remedies is "in the nature of statutes of limitation" and "do[es] not affect the District Court's subject matter jurisdiction[,]" thus, motions to dismiss for failure to exhaust are subject to Rule 12(b)(6) dismissal. *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999) (citing *Hornsby v. USPS,* 787 F.2d 87, 89 (3d Cir. 1986)).

230 (3d Cir. 2010); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)). Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### B. Exhausting EEOC Remedies

"Before bringing a claim for employment discrimination under Title VII, a plaintiff must file a timely charge of discrimination with the EEOC." *Savage v. Temple Univ. - of Commw. Sys. of Higher Educ.*, No. 19-6026, 2020 WL 3469039, at *3 (E.D. Pa. June 25, 2020); *see also Fort Bend Cnty. v. Davis*, 587 U.S. 541, 551 (2019) ("Title VII's charge-filing requirement is a procedural rule, albeit a mandatory one...."). Only after the EEOC investigates the charge and issues a right-to-sue letter may the plaintiff file a private action in federal court. *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (explaining that this process gives the "EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court" (quotation marks omitted)).

Since exhaustion is a prerequisite to filing suit, the Third Circuit has held that "the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . .

.'" *Hicks v. ABT Assoc., Inc.,* 572 F.2d 960, 966 (3d Cir. 1978) (citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976)).

Likewise, "before filing an ADA claim in federal court," a plaintiff "must exhaust [his] administrative remedies." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 204 (3d Cir. 2021) (citing *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999); 42 U.S.C. §§ 12117(a), 2000e-5; *see also Phillips v. Sheraton Society Hill*, 163 F. App'x 93, 94 (3d Cir. 2005) ("Nonexhaustion constitutes a possible ground for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") (citing *Anjelino*, 200 F.3d at 87). "These pre-suit requirements, which include the step of filing a charge and receiving a right-to-sue letter from the EEOC, are 'essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action.'" *Simko*, 992 F.3d at 206–07 (quoting *Ostapowicz*, 541 F.2d at 398). The United States "Supreme Court has also emphasized that a fundamental aim of the pre-suit requirements is to 'give prompt notice to the employer' and 'encourage the prompt processing of all charges of employment discrimination.'" *Simko*, 992 F.3d at 207 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 121 (2002)). "The exhaustion requirement thus advances the remedial purposes of the ADA." *Simko*, 992 F.3d at 207.

There are two areas on an EEOC charge form where the claimant discusses the bases for a claimant's discrimination claim — first, in the area titled "bases for discrimination," the claimant must check the box next to the relevant categories of discrimination (e.g., race, sex, religion), and second, in the area titled "particulars," the claimant must describe the events giving rise to his claim of discrimination. *Savage*, 2020 WL 3469039, at *3 (citing *Hicks*, 572 F.2d at 962). A court will not dismiss a plaintiff's claim solely because the plaintiff failed to

check the appropriate box on the charge form because the court considers all "claims explicitly referenced" in the charge and any "acts encompassed within the charge's broad terms or those fairly read as interchangeable with the described discrimination, as well as any claims that are closely related to those included in the administrative complaint." *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 468 (E.D. Pa. 2014). Yet, when the employee "does not offer facts or check the box on the opening form" for a specific type of discrimination, a court must dismiss the claim "with prejudice for failure to exhaust [his] administrative remedies." *Titus-Williams v. Schirg*, No. 19-4743, 2020 WL 424950, at *1 (E.D. Pa. Jan. 24, 2020). Pro se claimants must also exhaust their claims before seeking judicial review. *See id.* (citing *Smith v. Soc. Sec. Admin.*, 54 F. Supp. 2d 451, 454 (E.D. Pa. June 29, 1999)). A claim not expressly labeled in the EEOC charge is exhausted if the acts alleged in the judicial complaint are: "fairly within the scope of (1) the prior EEOC complaint, or (2) the investigation arising therefrom." *Simko*, 992 F.3d at 207 (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

In Pennsylvania, an aggrieved party must initiate this pre-suit procedure by filing a charge with the EEOC within 300 days of the challenged employment action. *See Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000)[3]; *see also* 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge[.]").

### C. ADA Discrimination – Review of Applicable Law

"No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

---

[3]     Although *Watson* is a Title VII case, claimants must file ADA claims in adherence with Title VII's administrative procedures. *See Churchill*, 183 F.3d at 190; *see also Simko*, 992 F.3d at 204.

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year...." 42 U.S.C. § 12111(5)(A). To state a prima facie case of discrimination under the ADA, a plaintiff must also show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Stouch v. Twp. of Irvington*, 354 F. App'x 660, 666 (3d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). "The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination." *See id.*

The ADA defines "disability" as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The determination of whether an individual is substantially limited in a major life

activity must be made 'on a case-by-case basis.'" *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015) (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)).

Claims of discrimination under the ADA are analyzed under the framework set forth in *McDonnell Douglas. See Cassidy v. Halyard Health, Inc.*, 319 F. Supp. 3d 474, 480 (E.D. Pa. 2019) (citing *McDonnell Douglas*, 411 U.S. 792). Under this framework, a plaintiff must first establish a prima facie case of disability discrimination by showing that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Cassidy*, 319 F. Supp. 3d at 480 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Once a plaintiff makes out a prima facie case, "the burden shifts to [d]efendant to articulate a non-discriminatory reason for the action, and if it does so, the burden shifts back to [p]laintiff to show that the reason was a pretext for discrimination." *Cassidy*, 319 F. Supp. 3d at 480.

**D. Retaliation – Review of Applicable Law**

To establish a prima facie case of retaliation under Title VII, the ADA, and/or the PHRA, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Boykins v. SEPTA*, No. 17-1980, 2018 WL 460652, at *2, *6 (3d Cir. 2018) (analyzing claims under Title VII and the PHRA the same).

Pursuant to the first element, a report to a superior may constitute protected activity where discrimination is specifically alleged in the verbal or written report. *See LeBlanc v. Hill Sch.*, No. 14-1675, 2015 WL 144135, at *14 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (stating that the employee must have a good faith, reasonable belief that the activity complained of is unlawful (citing *Clark Cnty v. Breeden*, 532 U.S. 268, 271 (2001))). "Requesting an accommodation is a protected employee activity under the ADA." *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)).

As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. . . . The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Suders*, 542 U.S. at 141.

Under the third element, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *See Moore,* 461 F.3d at 341–42. In determining causation, courts often look to the "temporal proximity between the protected activity and the alleged discrimination" and "the existence of a pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001)) (internal quotation marks omitted), *overruled on other*

*grounds by Burlington Northern*, 548 U.S. 53. Since there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine if retaliation has been sufficiently pled. *Jensen*, 435 F3d at 450 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000)). However, "for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (explaining that "a prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim" (internal quotations and citations omitted)). "Instead of requiring a prima facie case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted).

## IV.    ANALYSIS

PDS seeks to dismiss the disability discrimination claim, the retaliation claim under Title VII and the ADA, and the wrongful termination claim under Title VII and the ADA because McNear failed to exhaust them before the EEOC. In return, McNear alleges that the claims were exhausted because they arise out of the initial EEOC Charge in which he alleged that PDS terminated him following a "workplace incident," which he contends was his disability.

Upon reviewing McNear's EEOC Charge and the Amended Complaint, as well as the EEOC intake interview and EEOC letters, the Court agrees with PDS. The Court notes that McNear did not raise any of the above-mentioned claims in his EEOC Charge. McNear's reference to a "workplace incident" in his EEOC Charge did not put the EEOC on notice of disability discrimination, retaliation, or wrongful termination. Thus, the Court dismisses

McNear's claims for disability discrimination, retaliation, and wrongful termination under Title VII and the ADA.

### A. ADA Discrimination

McNear has not administratively exhausted his disability discrimination claim. No disability discrimination allegations appeared on the face of McNear's EEOC Charge. In the box marked "Discrimination Based On" McNear checked the box for "Age" and "Sex," not disability. EEOC Charge. Also, the descriptive paragraph of his EEOC Charge does not allege any facts regarding disability discrimination. McNear's EEOC Charge only alleges that he believes he "was discriminated against due to my sex (male) and my age (YOB 1981) in violation of the [ADEA] and [Title VII], with respect to promotion." *Id.* Therefore, McNear did not explicitly allege disability discrimination on the face of his EEOC Charge.

According to the standard in *Simko*, a claim not mentioned in the EEOC charge may still be exhausted if it is "fairly within the scope of (1) the prior EEOC complaint, or (2) the investigation arising therefrom." 992 F.3d at 207. Here, McNear alleges that his reference to a "workplace incident" in the descriptive paragraph of his EEOC Charge is sufficient to put the EEOC on notice of disability discrimination. However, the Court notes that McNear does not elaborate on the "workplace incident" on the face of the Charge. McNear only stated that he refused to take a drug test after the incident and that the incident was "a separate unrelated OSHA issue." EEOC Charge. McNear provides no facts on the EEOC Charge to explain what happened in the incident, whether the incident gave him a disability, or whether PDS terminated him because the incident gave him a disability. The Court notes that, under OSHA, there are many types of issues that may arise that do not relate to disability discrimination. *See* 29 U.S.C. §§ 651–678. Thus, there is nothing on the face of McNear's EEOC Charge to infer what the

workplace incident was, much less that it caused a disability. *See McIntosh v. White Horse Vill., Inc.*, 176 F. Supp. 3d 480, 482 (E.D. Pa. 2016) (dismissing a disability discrimination claim for failure to exhaust administrative remedies when the plaintiff did "not describe the reason for her medical leave of absence, [] describe any disability she suffers or is perceived as having, [or] indicate that she is asserting a violation of her rights under the ADA").

Furthermore, an EEOC investigation into disability discrimination would not reasonably have "grow[n] out" of McNear's EEOC Charge. *See Hicks*, 572 F.2d at 966. Here, McNear maintains that his disability discrimination claim grew out of his age and sex discrimination charge because he alleged that PDS terminated him following an unidentified "workplace incident." EEOC Charge. As previously mentioned, McNear does not describe what the workplace incident was or that it caused a disability. All alleged facts in the EEOC Charge relate to age and sex discrimination. Therefore, the one sentence in McNear's EEOC Charge referring to the "workplace incident" did not provide the EEOC with adequate notice to investigate disability discrimination, particularly coupled with McNear's failure to include disability discrimination on the face of his EEOC Charge. *See McIntosh*, 176 F. Supp. 3d at 483 (dismissing a disability discrimination claim because the plaintiff only maintained in her EEOC charge that "she believed this demotion was due to her race, religion, or request for religious accommodation," and her charge did not provide "adequate notice to the EEOC that it should investigate whether disability-based discrimination occurred").

Likewise, McNear's intake interview and the September 10, 2025 letter from the EEOC directly show that the EEOC did not investigate a disability discrimination claim. McNear's intake interview with the EEOC briefly discusses the workplace incident generally and does not

14

060926

address the alleged disability discrimination.[4] *See* ECF No. 23. McNear even admitted in the intake interview that he did not think that his termination was discriminatory. *See id.* Moreover, the September 10, 2025 letter from an EEOC investigator in advance of the Notice of Right to Sue does not discuss disability discrimination, but only discussed McNear's age and sex discrimination claims. *See id.* Not only would a reasonable investigation into disability discrimination not grow out of McNear's EEOC Charge, but the record also shows that the EEOC did not investigate disability discrimination based upon the "workplace incident."

In sum, although McNear discusses the "workplace incident" in the Amended Complaint, McNear does not allege any facts in his EEOC Charge for the EEOC to infer a discrete disability discrimination claim. Therefore, McNear failed to exhaust administrative remedies for his disability discrimination claim. *See Voss v. Manitowoc Cranes, LLC*, No. 20-754, 2021 WL 1174498, at *6 (M.D. Pa. Mar. 29, 2021) (dismissing an ADA discrimination claim based on failure to exhaust where the plaintiff "failed to check the box indicating that she was bringing a claim for disability discrimination in her EEOC charge . . . and the text of her EEOC charge also did not indicate that she was discriminated against on the basis of disability"); *Cleckner v. 3M Co.*, No. 22-02055, 2024 WL 580547, at *4 (M.D. Pa. Feb. 13, 2024) (dismissing a disability discrimination claim because the plaintiff failed to raise the claim in the text of her EEOC charge and failed to check that box on her charge, thus, the "administrative filings did not enable the EEOC to investigate a disability discrimination claim").

The Court dismisses Count II of the Amended Complaint.

---

[4]    "[A]llegations set forth in a questionnaire are insufficient to satisfy the exhaustion requirement. Rather, the allegations must appear in the formal charge signed by the claimant and served on the respondent." *Binder v. PPL Servs. Corp.*, No. 06-2977, 2009 WL 3738569, at *5 (E.D. Pa. Nov. 5, 2009); *see also Wilson v. Young Windows Inc.*, No. 06–5344, 2009 WL 564955, at *8 (E.D. Pa. Mar. 3, 2009).

### B. Retaliation under Title VII and the ADA

For fundamentally the same reasons stated above, McNear failed to exhaust his retaliation claim. In his EEOC Charge, McNear did not check a box alleging retaliation, nor did he allege any facts in the EEOC Charge suggesting retaliation. His retaliation claim is not on the face of his EEOC Charge. Therefore, a retaliation claim is not within the scope of McNear's EEOC Charge. *See Watson v. Se. Pa. Transp. Auth.*, No. 96-1002, 1997 WL 560181, at *7 (E.D. Pa. Aug. 28, 1997) (granting summary judgment because of the plaintiff's failure to exhaust administrative remedies for retaliation claims, noting that "[n]either the charge nor the affidavit use the word, 'retaliation[,]'" and the plaintiff only checked "sex" and "disability," on the charge); *see also Rogers v. UPMC Altoona*, No. 22-174, 2025 WL 1195519, at *4 (W.D. Pa. Apr. 8, 2025), *report and recommendation adopted*, No. 22-174, 2025 WL 1194355 (W.D. Pa. Apr. 24, 2025) (noting that the retaliation claim fell outside of the scope of the EEOC charge because the plaintiff "did not allege retaliation or set forth facts suggesting retaliation, which are required for exhaustion").

Furthermore, an EEOC investigation into retaliation would not reasonably have grown out of McNear's EEOC Charge because McNear did not allege any facts in the Charge or during his interview that PDS retaliated against him because of his disability or his sex. Rather, McNear's EEOC Charge only alleged sex and age discrimination. As previously stated, the EEOC did not investigate retaliation because McNear only alleged age or sex discrimination. *See* ECF No. 23. Thus, the EEOC "would not have initiated a retaliation inquiry based on the information [McNear] gave in [his] charge." *Watson*, 1997 WL 560181, at *7. Thus, McNear failed to exhaust his administrative remedies for his retaliation claim. *See Dalzell v. Astrue*, No. 05-755, 2008 WL 598307, at *4 (W.D. Pa. Mar. 3, 2008) (granting a pre-discovery summary

judgment motion in a retaliation claim for failure to exhaust and noting that the charge only alleged disability discrimination); *see also Chang v. Berryhill*, No. 18-2928, 2018 WL 5316351, at *3 (E.D. Pa. Oct. 26, 2018) (dismissing a retaliation claim for failure to exhaust before the EEOC, instead only alleging physical discrimination and denial of reasonable accommodation).

The Court dismisses Count III of the Amended Complaint.

### C.  Wrongful Termination under Title VII and the ADA

For the same reasons discussed above, McNear failed to exhaust his wrongful termination claims under Title VII and the ADA. In McNear's EEOC Charge, he explicitly alleged that PDS terminated him on January 30, 2024 "for refusing a drug test after a workplace incident that is a separate, unrelated OSHA issue." EEOC Charge. Although the "workplace incident" allegedly involved a work injury, McNear did not allege any facts about the injury or that that his termination was based upon either sex (Title VII claim) or disability discrimination (ADA claim). Thus, a wrongful termination claim based on sex or disability discrimination is not within the scope of McNear's EEOC Charge. *See Warsavage v. 1 & 1 Internet, Inc.*, No. 17-5104, 2018 WL 2363605, at *2–3 (E.D. Pa. May 24, 2018) (dismissing a wrongful termination claim for failure to file "a specific charge alleging wrongful termination" before the EEOC).

Furthermore, for the reasons stated regarding the disability discrimination and retaliation claims, an investigation into McNear's wrongful termination based on gender or disability discrimination would not reasonably grow out of his EEOC Charge. McNear fails to allege any facts that his termination was based upon either sex or disability discrimination. Also, as previously stated, the EEOC did not investigate McNear's termination because he only alleged that it arose from an unrelated OSHA issue, not age or sex discrimination. *See* ECF No. 23. Therefore, a reasonable EEOC investigation would not have uncovered wrongful termination

based upon discrimination. Consequently, McNear failed to exhaust his wrongful termination claim under Title VII and the ADA.

The Court dismisses McNear's wrongful termination claim in Counts I of the Amended Complaint.

### D. Amendment

Granting leave to amend would be futile because McNear's time to file an amended EEOC charge has since expired. *See Simko*, 992 F.3d at 204 ("In Pennsylvania, an aggrieved party must initiate this pre-suit procedure by filing a charge with the EEOC within 300 days of the challenged employment action.") (citing 42 U.S.C. § 2000e-5(e)(1)). Thus, the Court dismisses McNear's unexhausted claims with prejudice. *See Chang*, 2018 WL 5316351, at *4 (dismissing a retaliation claim with prejudice for failure to exhaust administrative remedies before the EEOC); *Cleckner*, 2024 WL 580547, at *4 (dismissing a disability discrimination claim with prejudice as futile for failure to exhaust administrative remedies before the EEOC).

## V.    CONCLUSION

For the foregoing reasons, the Court grants the Partial Motion to Dismiss the disability discrimination claim, the wrongful termination claims under Title VII and the ADA, and the retaliation claim under Title VII and the ADA with prejudice for failure to exhaust the claims before the EEOC. The Court thus dismisses Counts II and III of the Amended Complaint and the wrongful termination claim in Count I of the Amended Complaint with prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge